UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 17-61391-CIV-DIMITROULEAS/SNOW

CHERRIE WALTON,

      Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE
COMPANY,

      Defendant.

## DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant, ST. PAUL FIRE & MARINE INSURANCE COMPANY (hereinafter, "St. Paul"), by and through undersigned counsel, hereby files its Objections to Magistrate Judge's Report and Recommendation [D.E. 45], as follows:

## I.    INTRODUCTION

After about 10 years of litigation, Cherie Walton ("Ms. Walton") secured an uncontested verdict against Internet Advertising Group ("IAG") and Omar Dames ("Mr. Dames"), her former employer and supervisor respectively. Ms. Walton now seeks to collect payment from St. Paul, as the insurer of IAG. The R&R addressed three principal questions: (1) whether this Court has diversity jurisdiction; (2) whether Ms. Walton's claim for payment of her judgment in the underlying action was barred as a matter of law by IAG's breach of the notice conditions in the St. Paul Policy; and (3) whether coverage was otherwise precluded for the judgment by the Policy's terms as a matter of law. The R&R recommended that this Court answer no to each of these questions. St. Paul urges this Court to answer yes based upon the undisputed facts (including the language of the St. Paul Policy) and Florida law.

## II.    JURISDICTION

**A.    This Court has subject matter jurisdiction, as St. Paul properly removed this §56.29 proceeding under 28 U.S.C. §1441.**

The R&R recommends remand of this §56.29 proceeding to state court for lack of subject matter jurisdiction. [D.E. 45 at P. 8]. The R&R's recommendation is based upon two findings:

(1) the Magistrate found that this §56.29 proceeding is dependent upon the Ms. Walton's original tort action and, therefore, is not an independent "civil action" subject to removal under 28 U.S.C. §1441; and alternatively

(2) the Magistrate found that there was no diversity jurisdiction at the time of removal.

St. Paul objects to both findings. This Court may properly exercise subject matter jurisdiction over the §56.29 proceeding that Ms. Walton initiated against St. Paul in May of 2017, and should decline to remand this matter to Circuit Court of Broward County.

### 1.  For purposes of removal, Ms. Walton's proceeding against St. Paul is an independent "civil action" subject to removal under 28 U.S.C. §1441.

Ms. Walton's Florida Statute §56.29 proceeding against St. Paul constitutes a "civil action" subject to removal within the meaning of 28 U.S.C. §1441 because it sets forth an independent controversy – the availability of insurance coverage - against a new party – St. Paul. Section 1441 permits removal of "civil action[s] brought in a State court" over which federal district courts "have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have long interpreted this statute *broadly* to allow removal only of "independent suits" but not ancillary or "supplementary" proceedings. *Jackson-Platts v. Gen. Elec. Capital Corp.,* 727 F.3d 1127, 1134 (11th Cir. 2013) (collecting cases); *see also* B Charles Alan Wright et al., Federal Practice and Procedure § 3721 (4th ed. 2009) ("The limitation to civil actions is not particularly important because the federal courts have broadly construed the term").  "Whether a particular state judicial procedure qualifies as a separate action is not an all-or-nothing proposition. It depends on the context of each case in which it arises."  *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 724 (7th Cir. 2012). "Removability is a question of federal law, so the state's own characterizations of the proceeding are not decisive." (citing *Chicago, Rock Island & Pac. R.R. Co. v. Stude,* 346 U.S. 574, 580, 74 S.Ct. 290, 98 L.Ed. 317 (1954)); *see also Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127 (11th Cir. 2013) (acknowledging that while structure of state procedural law may be relevant, question of whether state court litigation is characterized as an independent civil action subject to removal is a matter of federal law). Under well settled precedent, "actions are not ancillary and are instead independent

civil actions when they are 'in effect suits involving a new party litigating the existence of a new liability." *Jackson-Platts v. Gen. Elec. Capital Corp.,* 727 F.3d 1127, 1134 (11th Cir. 2013).

Here the §56.29(6) proceeding is clearly a new suit involving a new party – St. Paul – litigating the existence of a new liability – insurance coverage. The court in the §56.29 proceeding will be required to determine St. Paul's liability under a policy of insurance it issued to IAG. To do so, the court will have to engage in contract interpretation to determine whether St. Paul breached its obligations under the contract of insurance it issued to the insured and whether the insured breached its obligations under that same contract of insurance by failing to provide timely notice of the claim. These issues unquestionable set forth wholly new legal theories that rely on a different set of facts.

Indeed, the Eleventh Circuit has already found that a §56.29 proceeding can constitute an independent civil action subject to removal where there are new legal theories asserted. In *Jackson-Platts v. Gen. Elec. Capital Corp.,* 727 F.3d 1127, 1131 (11th Cir. 2013), the Eleventh Circuit found that a §56.29 proceeding against judgment debtor transferees seeking to avoid allegedly fraudulent conveyances constituted an independent "civil action" subject to removal because the substance of the claims against the transferees were governed by Florida's Uniform Fraudulent Transfer Act which is a substantive statute that imposes liability. The Eleventh Circuit was also persuaded that the §56.29 proceeding at issue was an independent "civil action" because Florida courts have provided substantial procedural safeguards – such as discovery and the right to a jury trial – in §56.29(6). *Id.* at 1137. In the words of the Eleventh Circuit, such substantial procedural safeguards "suggest the [Section 56.29] proceedings are not merely ancillary." *Id. See also Schron v. Nunziata*, 136 So. 3d 684, 686 (Fla. 2nd DCA 2014) (reasoning that Section 56.29 proceedings in Florida are not always merely ancillary; impleaded third parties must have an opportunity to raise defenses and protect their interests in a manner consistent with due process) (citing, *Jackson–Platts v. Gen. Electric Capital Corp.*, 727 F.3d 1127, 1137 (11th Cir. 2013)).

As was the case in *Jackson-Platts*, the Section 56.29 proceeding against St. Paul is not merely ancillary as it will be governed by Florida law governing third party liability insurance which is a substantive and specialized body of law that imposes liability on insurers. Indeed if the court were to find there to be a dispute of material fact as to the parties obligations under the insurance contract, the parties would have the opportunity to have those issues of fact determined before a jury in the §56.29 proceeding. The fact that Ms. Walton seeks to impose liability on St.

Paul pursuant to a separate and distinct body of substantive law and the numerous procedural safeguards available to the parties with respect to such liability underscore that the proceedings brought against St. Paul are not ancillary in any sense.

The Eleventh Circuit further noted in *Jackson-Platts* that a section 56.29 proceeding was analogous to a garnishment proceeding which the Eleventh Circuit has long recognized as removable civil actions under 28 U.S.C. §1441(a); See *Butler*, 592 F.2d at 1295 ("garnishment actions against third-parties are generally construed as independent suits, at least in relation to the primary action."); *Webb v. Zurich Ins. Co.*, 200 F.3d 759, 760 (11th Cir. 2000) (same). The Eleventh Circuit reasoned that garnishment actions were removable because they were "in effect suits involving a new party litigating the existence of new liability." *Butler*, 592 F.2d at 1296 (emphases added). Other federal courts have held similarly. *See, e.g., Swanson v. Liberty Nat'l Ins. Co.*, 353 F.2d 12, 13 (9th Cir. 1965) (holding that garnishment is independent civil action for purposes of 28 U.S.C. § 1441); *Randolph v. Emp'rs Mut. Liab. Ins. Co.*, 260 F.2d 461, 464–65 (8th Cir. 1958) (same); *Stoll v. Hawkeye Cas. Co.*, 185 F.2d 96, 99 (8th Cir. 1951). As the Section 56.29 proceeding is akin to a traditional garnishment proceeding, the rationale of these cases likewise confirm that this Court has proper jurisdiction over this matter.

The Seventh Circuit considering an analogous Illinois state §56.29 proceeding regime found it had jurisdiction over the state proceeding which sought the proceeds of an insurance policy to satisfy an underlying judgment. In *Travelers Prop. Cas. v. Good*, 689 F.3d 714 (7th Cir. 2012), an Illinois state supplementary citation proceeding was brought against a liability insurer by a judgment creditor seeking to determine the insurer's asserts for satisfaction of the judgment against the insured. The Seventh Circuit concluded that the state §56.29 proceeding against the defendant's liability insurer was a removable independent civil action because the proceeding brought in a new party and raised new and distinct disputed issues such that the proceeding was not "substantially a continuation of a prior suit." *Id.* at 725 (citation omitted). In coming to this conclusion, the Seventh Circuit likened the citation proceeding to a garnishment action and reasoned:

> No bright-line formula exists for separating the independent and removable sheep from the ancillary and nonremovable goats. But one nineteenth century judge offered this helpful distinction: "where the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court." *Buford v. Strother,* 10 F. 406, 407 (C.C.D.Iowa

1881) (Love, J.). A citation proceeding (or a garnishment proceeding, as it is called in most jurisdictions) may often be "merely a mode of execution of relief....Consistent with Judge Love's distinction, however, when garnishment proceedings present genuine disputes with new parties and raise new issues of fact and law, courts overwhelmingly treat them as independent and removable actions.

*Id.* at 724–25 (citations omitted).

The Seventh Circuit further reasoned that the citation proceeding against the insurer presented an independent controversy with new parties and could be distinguished from the underlying case.  In the underlying case, the issues was whether the insured had violated a federal statute concerning credit card receipts and, if so, what the damages awarded should be. On the other hand, in the citation proceeding the principal issue was whether the insured's liability policies covered the claims for the alleged violations of federal law. *Id*. at 725-26. According the Seventh Circuit: "The citation proceeding thus features a new party, a new and distinct legal claim, new issues of fact and law, and even a realignment of the original litigants. Aside from the citation action's origination in the underlying suit, it became for all intents and purposes a separate case." *Id.* at 726. The logic of the Seventh Circuit's decision in *Good* concerning Illinois citation proceeding applies with equal force to Florida's  analogous §56.29 proceeding.[1]

In the R&R, the court erroneously found that the §56.29 did not represent an independent proceeding because whether St. Paul's policy provided coverage for the underlying matter was "entirely dependent on the tort litigation" particularly given the issue of whether St. Paul was prejudiced by the lack of timely notice. As is the case in any garnishment proceeding, there must necessarily be an underlying tort action that leads to a judgment prior to the initiation of a

---

[1] Additionally, St. Paul's position is supported by Florida's non-joinder statute. Florida Statute §627.4136 specifically prohibits the joinder of any insurance company by a third party not an insured under the policy, to an underlying action. In fact, the statute requires the third party to obtain a judgment or verdict against the insured in the underlying case before it can initiate a cause of action for recovery against the insured. The statute mandates that this subsequent action against the insurance company as separate an independent from the underlying action in order to protect the insurer's rights. This statute has been applied to prevent a third party from impleading an insurer in the underlying tort action against its insured for purposes of recovering against the insurer. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289 (Fla. 1991); *GEICO General Insurance Company v. Harvey*, No. 4D12-1525 (Fla. 4th DCA Jan. 23, 2013).

garnishment proceeding. The fact that a subsequent garnishment proceeding is tied to an underlying tort judgment has no bearing on whether such a proceeding is an independent civil action for purposes of removal jurisdiction. Indeed, the majority of federal circuits to consider this issue have resoundingly found that garnishment actions are subject to removal. Moreover the §56.29 proceeding at issue (as is the case for any garnishment proceeding) is not merely a mode of execution or relief, but instead involves an independent controversy – that of insurance coverage – and therefore it is rightfully considered an independent action.

The court in the R&R also unreasonably limited the Eleventh Circuit's decision in *Jackson-Platts* to §56.29 proceedings only involving allegations of fraudulent transfers.[2] As discussed above, the §56.29 proceeding at issue will be determined by the application of Florida substantive law governing third party liability insurance much in the same way the proceeding in *Jackson-Platts* was to be determined by applying case law concerning the Florida Uniform Fraudulent Transfer Act. Indeed, coverage actions related to general liability insurance are routinely – and almost universally – litigated separate and apart for the underlying suit that may be giving rise to those coverage obligations. While a determination of an insurer's contractual obligations may necessarily call for an understanding of either allegations asserted in an underlying complaint (for purposes of determining a duty to defend) or facts established by an underlying verdict (for purposes of determining a duty to indemnify), it does not necessarily follow that the coverage action "is dependent" on the underlying action against an insurer's insured.[3]

---

[2] Similarly, the court in *Blue Cross and Blue Shield of Fla., Inc. v. Adcahb Med. Coverages, Inc.*, 3:17-CV-865-J-39PDB, 2018 WL 3599009, at *4 (M.D. Fla. Mar. 13, 2018) also read the Eleventh Circuit's decision in *Jackson-Platts* too narrowly and refused to follow the Eleventh Circuit's guidance in *Jackson-Platts* deeming it dicta. The *Blue Cross* court also erroneously concluded that a §56.29 proceeding is not independent because the proceeding itself cannot be used to establish a third party's liability and suggested that the claims against the impleaded insurer were likely subject to dismissal in the underlying §56.29 proceeding. However as the Eleventh Circuit noted in *Jackson-Platts*, a §56.29 proceeding can be used to establish a third party's liability given that the statute expressly provides that a third party may raise defenses and protect its interests in a manner wholly consonant with genuine due process. The §56.29 proceeding at issue is a removable civil action precisely because it is being used to establish a third party's liability – Travelers liability under the policy it issued to IAG.

[3] The court's reliance in the R&R on *State of Fla. Dep't of Ins. v. Accelerated Benefits Corp.* is inapposite. The *Accelerated Benefits* decision involved a question regarding application of the

In sum, the R&R incorrectly concludes that "the action before this Court '[b]y its very nature…is not an independent action that could have been filed in federal court'" and therefore remand is required. As shown above, this action is absolutely independent from the underlying tort litigation and, therefore, removal was proper.

### 2.      Removal was proper under 28 U.S.C. § 1332.

St. Paul removed this matter to federal court on July 12, 2017, pursuant to 28 U.S.C. §1332. The R&R recommended that this Court remand the section 56.29 proceeding for lack of diversity jurisdiction. [D.E. 45 P. 8]. Principally, the R&R relies on the fact that St. Paul's insured and underlying defendant, IAG, remained in the litigation at the time of removal because final judgment as to IAG had not yet entered. *Id*. It is St. Paul's position that this §56.29 proceeding was an independent civil action brought by Ms. Walton against St. Paul only.[4] Since Ms. Walton was a citizen of Florida and St. Paul a citizen of Connecticut, there was complete diversity at the time of removal.[5]

 Even assuming that IAG was a defendant to this proceeding (even though it no longer existed and this was an independent action against St. Paul only), the R&R notes, when considering *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996), that any jurisdictional defect here may have been cured in August 2017 when IAG was eliminated from the underlying proceeding by the entry of Final Judgment. [D.E. 45 at P. 8 Footnote 5]. The R&R ultimately refuses to address *Catepillar* and the question of a cure, because it finds other jurisdictional defects but this Court is certainly free to do so as well as the other defects identified by the R&R, namely: (1) the forum defendant rule under 28 U.S.C. §1441(b)(2); (2) the direct action rule under 28 U.S.C. §1332(c)(1); (3) the 30 day removal requirement under 28 U.S.C. §1446(b)(3); and (4) IAG's failure to consent to removal under 28 U.S.C. §1446(b)(2)(A).

---

Florida common law doctrine of "home venue privilege" which has nothing to do with federal removal jurisdiction.

[4] IAG is not afforded the right to appear, contest, or assert defenses in proceedings filed pursuant to Fla. Stat. §56.29.

[5] This is particularly true in light of the fact that IAG dissolved in 2012 and was no longer a legal entity (or citizen of any state) at the time of removal in 2017. A corporate litigant is a citizen of its state of incorporation and its principal place of business.  Fed. R. Civ. P. §1332(c)(1). It is undisputed that IAG had neither a state of incorporation nor a place of business (as it was conducting none) in 2017.

To a large the additional jurisdictional defects found by the R&R, much like the diversity issue, depend on this Court's view of whether the supplemental proceeding was a new action solely between Ms. Walton and St. Paul, or not.  For example, if the answer is yes, there is no forum defendant problem because St. Paul is not a citizen of Florida, nor is this case similar to the direct actions that are the concern of 28 U.S.C. §1332(c)(1), nor would IAG been required to consent to the removal of an action to which it was not a party (nor even could have been a party because it was not a legal person).  St. Paul acknowledges the strangeness of the procedural posture, but notes that if Ms. Walton had waited to bring a separate action against St. Paul once she had a final judgment fully in hand, that case would have clearly been removable under 28 U.S.C. §1332. Here, as in that scenario, this matter is new action solely between Ms. Walton and St. Paul.

The R&R also recommended against re-alignment of the parties, *Scheele v. Fortney*, 2014 WL 12478006 (S.D. Fla. 2014), in which the court remanded for lack of subject matter jurisdiction after removal by the tortfeasor's insurer, because the interests of the insured defendant remained adverse to the plaintiff's interests. [D.E. 45 P. 9]. The R&R distinguishes the present matter from *City of Vestavia Hills v. Gen. Fidelity Ins.* Co., 676 F.3d 1310, 1313 (11th Cir. 2012), and *Wheeler's Moving & Storage, Inc. v. Market Ins. Co.,* 2011 WL 3410633 (S.D. Fla. 2011), on the grounds that judgments had already been obtained against the insureds. It is not clear that from the R&R why this Court should not re-align the parties in much the same way (if it considers IAG a party to the §56.29 proceeding) given that a final judgment has indeed entered.  In *Vestavia Hills* and *Wheeler's*, much like here, the court found diversity where the plaintiff no longer sought relief from the defendant and "[t]he 'principal purpose' of the suits was to determine if an insurer must cover a judgment against the insured." *Scheele,* WL 12478006 at *3.

The present action is against a different party, seeking new relief, arising from a different theory of liability, and was instituted over 10 years after the conclusion of the underlying tort case. The jurisdictional requirements for removal have been met by St. Paul, and this Court has subject matter jurisdiction.

## III.   UNTIMELY NOTICE

St. Paul is entitled to summary judgment in this supplemental proceeding because IAG's intentional breach the policy's notice conditions prejudiced St. Paul as a matter of law. The R&R concluded that issues of fact precluded summary adjudication in St. Paul's favor. St. Paul objects to this recommendation.

All agree that, under Florida law, timely notice is a condition precedent to liability insurance coverage. *Aseff v. Catlin Specialty Ins. Co., Inc.*, 115 F. Supp. 3d 1364, 1369 (S.D. Fla. 2015) (citing *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981)). The failure of an insured to give a timely notice of loss may preclude recovery under the policy. *Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*, 592 F. App'x 803, 806 (11th Cir. 2014); *see also Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099 (11th Cir. 2017). Even if an insured breaches the notice conditions to a policy, such a breach does not relieve the insurer of its coverage obligations unless the insurer was prejudiced by the breach. *See id*. In Florida, there is a rebuttable presumption of prejudice. *See Aseff*, 115 F. Supp. 3d at 1369.  Thus, the issue of untimely notice presents two questions:

> (1)    Did IAG, based upon the undisputed material facts, breach the notice conditions in the policy as a matter of law; and
>
> (2)    Did Ms. Walton present sufficient evidence to overcome the rebuttable presumption of prejudice?

The R&R found that disputed issues of fact precluded summary judgment in St. Paul's favor on each prong of this analysis. St. Paul disagrees.

**A.    IAG breached the notice provisions of the St. Paul policy as a matter of law.**

The requirements for a late notice defense are well-established. An insurer must show "(1) what the insurance policy required with respect to notice, (2) when notice was provided, within the meaning of the policy and Florida law, (3) whether notice was timely, and (4) whether prejudice exists, either by operation of the unrebutted presumption or otherwise." *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.,* 2009 WL 1513400, at *6 (M.D.Fla.2009) (citing *Waldrep,* 400 So.2d at 785). St. Paul has met all four of these elements as a matter of law and is thus entitled to summary judgment.

First, the St. Paul insurance policy required that IAG report a claim to St. Paul "[a]s soon as possible after receiving them, mail, deliver, or otherwise give to us a copy of . . . all legal documents relating to any suit brought. . . against you or any other person or organization protected under your policy." *See* [D.E. 1-4 at P. 25-28]. Courts have construed "prompt," "as soon as practicable," "immediate," and other similar phrases to mean that notice should be given with "reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.,* 599

Fed. Appx. 875, 879 (11th Cir.2015) (citations omitted). Here, being aware of the incident almost immediately, IAG never reported the claim to St. Paul. In fact, St. Paul did not receive notice of Plaintiff's claim until June 22, 2017, when it was served with a copy of the Notice to Appear regarding Ms. Walton's proceedings pursuant to Chapter 56.29, Florida Statutes, which was nearly 10 years after the original incident (9 years, 5 months, and 22 days after suit was filed, and 1 year, 15 days after the verdict). [DE 1-3]. Under these circumstances, no fact finder could determine that notice was timely.

While the question of what constitutes a reasonable time under the circumstances is typically one for the trier of fact, where, as here, "'the undisputed factual record establishes notice is so late [almost a decade later] that no reasonable juror could find it timely, [ ] courts will deem the notice untimely as a matter of law.'" *Aseff*, 115 F. Supp. 3d at 1367 (quoting *Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co.,* 916 F.Supp.2d 1244, 1258 (M.D.Fla.2013)); *see also Soronson v. State Farm Fla. Ins. Co*., 96 So. 3d 949, 953 (Fla. 4th DCA 2012). Indeed, numerous courts have found that notice provided to an insurer many years after an occurrence and/or suit has been initiated to be untimely as a matter of law. *See, e.g., Aseff,* 115 F. Supp. 3d at 1369 (holding notice four years after an occurrence and three years after suit has commenced is untimely as a matter of law); *Yacht Club,* 599 Fed. Appx. at 880 (finding notice given four years after the occurrence untimely as a matter of law); *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.,* No. 11–80272–CIV, 2012 WL 3848569, at *6 (S.D. Fla. Sept. 5, 2012) (finding notice provided two years after the occurrence and eighteen months after suit was filed untimely as a matter of law); *1500 Coral Towers Condominium Ass'n, Inc. v. Citizens Property Ins. Corp.*, 112 So. 3d 541 (Fla. 3d DCA 2013) (holding notice after approximately five years prejudiced insurer); *Hope v. Citizens Property Ins. Corp*., 114 So. 3d 457 (Fla. 3d DCA 2013) (notice approximately four years after the loss occurred failed to rebut presumption that insurer was prejudiced to comply with insurance policy's notice provision; passage of time rendered insurer unable to determine exactly what damage was directly attributable to hurricane); *Hunt v. State Farm Florida Ins. Co*., 145 So. 3d 210 (Fla. 4th DCA 2014) (submitting sworn proof of loss almost five years after loss and mere days before filing suit against insurer created presumption of prejudice to insurer and precluded recovery, where insureds failed to rebut the presumption). In fact, some courts have even held that a period of six months or less is late as a matter of law. *See PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.,* 566 Fed. Appx. 845, 849 (11th Cir.2014) (citing cases).

These cases mandate a finding that IAG breached its required notice obligations under the St. Paul policy as a matter of law. Yet, despite this clear guidance from Florida courts in addition to the Eleventh Circuit, the R&R found there to be an issue of fact as to whether notice was timely provided to St. Paul. [D.E. 45 at P. 35]. The R&R found that Ms. Walton had identified evidence in opposition to St. Paul's motion for summary judgment that raised "a reasonable inference that IAG notified St. Paul in August 2012 (four years before trial)." [R&R at pg. 35]. The R&R notably indicates that this purported notice was four years before trial, but omits to consider that such notice even if given (which St. Paul denies) would have been more than four and half years after suit had been initiated against IAG. Alternatively, it appears that the R&R may have concluded that there was Ms. Walton's purported evidence of notice in 2008 sufficient enough to preclude summary judgment on this issue.[6]

The undisputed material facts laid out by St. Paul's motion for summary judgment are clear. Mr. Romm knowingly and intentionally kept the St. Paul policy a secret and would not divulge its existence to IAG's defense counsel, Ms. Cartwright, who requested whether there were any insurance policies that would cover the allegations in Plaintiff's complaint. *See* [D.E. 38 at Ex. "G"]. Specifically, Mr. Romm responded to Ms. Cartwright's email correspondence on November 17, 2008, and stated "I doubt it. What do you think? Would they? What if we just said 'NO.'. . . They want the policy because they are hoping if the insurance company gets involved that they would be willing to fork over some money whereas Mr. Weinsoff (CEO of IAG) is not. . . ." *See id.* The R&R draws the inference from these facts that IAG could have obtained the policies for review or consulted with St. Paul regarding potential coverage. [D.E. 45 at P. 35]. Why would Mr. Romm have asked "Would they?" if he or Ms. Cartwright had consulted either the policies or St. Paul? Why does his email nowhere reference the terms of the Policy or reference speaking to St. Paul, if that were the case? Speculation cannot create a disputed issue of material fact. The only reasonable inference that can be drawn from Mr. Romm's email correspondence is that he had absolutely no intention

---

[6] Instead of reporting the claim directly to St. Paul, Mr. Romm "tried to place a call" to his insurance agent on November 17, 2008, and indicated that he would try again the next day. *See* [D.E. 38-7] (emphasis added). However, this is not evidence sufficient to establish that notice was provided to St. Paul in 2008. The record is deplete of any evidence that Mr. Romm actually called and spoke with his insurance agent the next day. At best, Mr. Romm communicated to the agent, but there is no evidence that the agent ever communicated with St. Paul. More likely, Mr. Romm never communicated with the agent at all.

of revealing the St. Paul Policy to Ms. Walton nor was he going to report the loss to St. Paul because he thought St. Paul might want to settle when Mr. Weinsoff (Mr. Romm's boss) did not want to do so.

On July 9, 2012, Mr. Romm again made it clear that he had no intention of revealing the St. Paul Policy as he told Ms. Cartwright that "As for the insurance question, we have no information regarding insurance and **you are directed to simply 'NOT RESPOND' to any requests for insurance information. . . .**" [D.E. 38 at Ex. "L"] (emphasis added). Although Ms. Cartwright withdrew as counsel for IAG on July 10, 2012, she sent correspondence dated August 23, 2012, to Ms. Walton's counsel stating "Enclosed please find insurance documents received from St. Paul Travelers Insurance Co." [D.E. 38 at Ex. "N"]. The R&R infers that receiving insurance documents from St. Paul necessarily implies that St. Paul was notified of Ms. Walton's pending lawsuit by Ms. Cartwright. Insureds may request insurance documents from an insurance company at any time and do so for a variety of reasons. Nowhere does Ms. Cartwright's file state that she ever notified St. Paul of the existence of the suit or discussed potential coverage for the suit with St. Paul. In contrast, St. Paul has specifically stated under oath that it never received notice of Ms. Walton's suit prior to June 2017. [D.E. 23] [7]

However, it should be noted that whether notice was received in November 2008 (nearly a year after Ms. Walton's suit was filed), or in July of 2012 (four and a half years late), or in June of 2017 (almost ten years late), notice was untimely as a matter of law based on Florida law. Under any of these scenarios, IAG did not "[a]s soon as possible after receiving . . . legal documents relating to any suit brought timely notify St. Paul. [D.E. 1-4 at P. 25-28]. Based on the undisputed material facts, St. Paul is entitled to a finding that IAG breached the notice conditions in the policy as a matter of law.

> **2.     IAG's breach of the notice conditions prejudiced St. Paul as a matter of law.**

---

[7] The R&R focuses on the fact that St. Paul's Affidavit "contains no explanation of efforts made to investigate whether notice had been received, the insurer's custom for tracking such communications from an insured, or any other details relating to processing of claim notices." [D.E. 45 at P. 34]. St. Paul had no duty under Florida law to include such information. It was Ms. Walton's burden to produce evidence of a disputed issue of material fact. None of the evidence is sufficient to establish that IAG did not breach its contractual obligations to provide timely notice to St. Paul.

The undisputed material facts demonstrate that IAG and its general counsel Michael Romm knowingly and intentionally failed to timely report this loss. [D.E. 39 Ex. "G" and "L"]. IAG's decision to improperly refuse to comply not only with its contractual obligations to St. Paul but also Florida requirements to disclose potential insurance information when requested by Ms. Walton led to a ten year delay before St. Paul was made aware of Ms. Walton's suit in June of 2017. By that time, any defense St. Paul may have presented to the claim had been irrevocably comprised.

Typically, the Eleventh Circuit speaks of the notice requirements as providing an opportunity to an insurer "to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim." *Canadyne-Georgia Corp. v. Cont'l Ins. Co.*, 999 F. 2d 1547, 1555 (11th Cir. 1993) (quoting *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 231 S.E. 2d 245, 250 (1976) (also noting that "an unexcused significant delay [in providing notice] may be unreasonable as a matter of law."). Yet, in this case, the prejudice that St. Paul faced in June of 2017 was even direr. At that point, there was no matter left to defend. IAG had abandoned the defense of the suit four years earlier, and its liability defenses had been stricken. [D.E. 39 at Ex. "P"]. The matter was subsequently tried before a jury (without any defense offered by IAG) and a verdict was rendered against IAG (and improperly also against Mr. Dames). [D.E. 39 at Ex. "R".]. The time to request a new trial had long since passed. Fla.R.Civ. 1.530. It is clear from these undisputed material facts that St. Paul was prejudiced as a matter of law.

Yet, the R&R opined that Plaintiff has demonstrated "a triable question remains on the fact-intensive issue of whether prejudice has been rebutted."[D.E. 45 at P. 42]. The record evidence does not support such a finding.[8] The R&R correctly noted that the decisions awarding summary judgment involving untimely notice and prejudice often rely on records of "complete defaults by

---

[8] St. Paul does not wish to suggest that the circumstances of the case were the same in 2008 as they were in 2017. If the court were to find that a reasonable inference can be made that St. Paul was put on notice of Ms. Walton's in 2008 while the suit was being defended, which St. Paul disagrees with, admittedly a different prejudice analysis would need to be undertaken. St. Paul would still be entitled to summary judgment as to the issue of IAG's breach in 2008, even if issue of the rebuttable presumption of prejudice remained open. It should be noted that IAG had abandoned the defense of the suit prior to the purported date of tender in 2012 (much like a default situation).

the insured in the underlying tort litigation . . . or any opportunity for the insurer to affect the outcome of the proceedings", but yet concluded St. Paul does not fall within this category because IAG was "represented for many years by counsel who defended against [Ms. Walton's] claim." [D.E. 45 at PP. 37-38]. The prejudice suffered by St. Paul was nearly exactly the same as if IAG had taken a default from the start of the litigation; it was a difference without a distinction.

Rather than abandon the defense of Ms. Walton's case on Day 1, IAG instead did so approximately four and half years into the litigation. Ms. Cartwright withdrew as IAG's defense counsel on July 10, 2012. [D.E. 38 at Ex. "M"], and IAG failed to retain subsequent counsel as ordered by the trial court because it dissolved. [D.E. 38 at Ex. "J" and "M"]. Thereafter, on March 5, 2013, without proper defense counsel assigned, IAG's answer and affirmative defenses were stricken. [D.E. 38 at Ex. "P"]. The same consequence that would have occurred if IAG had never answered the complaint and the court had entered an default judgment. Ms. Walton's claim for damages was then tried before a jury without either IAG or even counsel present to defend the case on June 7, 2016. IAG left Ms. Walton's damage allegations completely unrebutted. Likewise, the absence of defense counsel present at the underlying trial lead to an incorrect verdict form. Specifically, the verdict form included a count for intentional infliction of emotional distress which had been previously dismissed and named Mr. Dames as a defendant when all counts against him had been previously dismissed. [D.E. 38 at Ex. "H" and "R"]. The fact that defense counsel had previously defended the claim for four years had no impact on the final outcome. The prejudice suffered by St. Paul was exactly the same as if IAG had never defended the matter at all with all the attendant loss of rights and ability to contest Ms. Walton's liability and damages claims.

In *Hamid Mohebbi Pharm.D v. Founders Ins. Co.*, 41 F. Supp. 3d 1412, 1417 (S.D. Fla. 2014), the court held that "[p]laintiff's argument that [d]efendant was not prejudiced by lack of notice of a case that resulted in an over half-a-million dollar judgment to which it could potentially be held is disingenuous." The court further held that

> [o]ne cannot now analyze the case and decide what the outcome of any litigation strategy would have been had [d]efendant been aware of the lawsuit. The [c]ourt can suppose arguments about lack of liability, applicability of the policy to the damage, and apportionment of liability, all of which may or may not have been successful had they been pursued. These suppositions merely illustrate that there exist arguments [d]efendant could have made and should have been given the opportunity to make during the lawsuit. . . . As a matter of law, [p]laintiff's breach of the policy's

> notice requirement denied [d]efendant the opportunity to protect its
> interests in what resulted in an over half-a-million dollar judgment
> and prejudiced [d]efendant.

*See id*. at 1418. Nor could this prejudice been somehow rectified in June of 2017 when St. Paul was notified of the Section 56.29 proceeding. By then, the time to request a new trial had long since passed, IAG had been dissolved, the CEO of IAG was deceased, and pertinent evidence surely no longer existed. Just as in *Hamid*, IAG's breach of the policy's notice requirement prejudiced St. Paul as a matter of law.  *Id*.

The R&R cites to *Gemini II*, 592 Fed. App'x at 807 (11th Cir. 2014) for the proposition that reserving issues of timely notice for trial is "particularly appropriate where an insurer asserts that it would have denied coverage even if the claim was timely" because "perhaps" that would raise an issue of fact sufficient to overcome summary judgment on the question of whether prejudice from untimely notice has been rebutted. [D.E. 45 at P. 36]. This is an incorrect statement of Florida law. The R&R fails to mention the rest of the *Gemini II* Court's opinion which holds that "an insurer which ultimately denies a claim based on lack of coverage may nonetheless be prejudiced due to late notice." *See Gemini II*, 592 Fed. App'x at 807. The *Gemini II* Court goes on to opine that accepting the argument that an insurer cannot be prejudiced by untimely notice when it would have denied a claim even if notice had been timely "'would effectively nullify a notice defense any time that an insurer raised any other defense to claims asserting a duty of coverage or duty to defend.'" *See id*. (quoting *National Casualty Co. v. Floyd County Board of Commissioners*, NA No. 01-182-C-H/K, 2002 WL 31045373, at *4 (S.D. Ind. Aug. 29, 2002)) (emphasis added). Under this reasoning, an "insurer could never claim late notice as a defense unless it was the sole basis for denying coverage", and "Florida law does not support such a theory." *Gemini II*, 592 App'x at 808 (citing *Wheeler's Moving & Storage, Inc.,* 2012 WL 3848569, at *8 (rejecting an argument that where an insurer denies a claim on grounds other than late notice, it waives the right to deny coverage based on late notice)); *see also Laster v. United States Fidelity & Guaranty Co.,* 293 So.2d 83, 86–87 (Fla. 3d DCA 1974) (where "prompt reporting" of accident to insurer "may have enabled insurer to better investigate and assess its rights and liabilities in this case," insured cannot rebut presumption by pointing to testimony concerning reason for denial of claim). Florida law does not require St. Paul to abandon its other coverage defenses in order to successfully prove that it was prejudiced by IAG's late notice. St. Paul should not be punished for asserting alternative coverage defenses.

Last, the R&R opined that St. Paul is not prejudiced by the late notice because it "indisputably" had notice for the claim before final judgment was entered and it could have sought relief from the judgment by intervening in the action or by moving to have the judgment set aside. [D.E. 45 at P. 38]. Yet, the R&R admits that Florida courts have refused to allow insurers to "intervene . . . where the insurer sought to inject new issues of coverage defenses or timely notice to the insurer, *see, e.g., Allstate Ins. Co. v. Johnson*, 483 So. 2d 524 (Fla. 5th DCA 1986), as declaratory actions are available for resolution of such issues." [D.E. 45 at P. 41, n. 35].  Moreover, even if such relief was available to St. Paul, there would be no cure to the prejudice caused by IAG's breach and abandonment of the defense of the suit. Was a court likely to reinstate IAG's prior answer and affirmative defenses? Undo the verdict when the time for requesting a new trial had long since passed? Hold a new trial after IAG had been long ago dissolved; IAG's CEO Michael Weinsoff had passed away; and witnesses and evidence likely lost? Moreover, St. Paul has no doubt that Ms. Walton would vigorously dispute any effort to void the Final Judgment or even to amend it in any fashion. The prejudice suffered by St. Paul was due to IAG's actions (or inaction) and cannot be cured by a motion to vacate.[9]

In conclusion, there is no genuine factual dispute that IAG failed to give timely notice as required by the St. Paul policy. As a result, St. Paul was prejudiced, and this Court should enter summary judgment in St. Paul's favor.

## IV.   COVERAGE FOR PLAINTIFF'S CLAIMS

### A.   The Employer's Liability Exclusion precludes coverage for Ms. Walton's suit.

The St. Paul Policy unambiguously excludes coverage for the Ms. Walton's claims against her employer, IAG. The Policy states:

> **Employers liability.** We won't cover bodily injury to an employee of the protected person arising out of and in the course of his or her:

---

[9] St. Paul acknowledges that *Hamid*, 41 F. Supp. 3d at 417 (S.D. Fla. 2014) (citing *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Harris*, 197 So. 2d 567 (Fla. Dist. Ct. App. 1967), held that an insurer may be held liable for a default judgment if the insurer had a viable opportunity to set it aside. Although St. Paul does not believe that it has a viable option to have this matter set aside pursuant to Florida Rules of Civil Procedure 1.540, out of an abundance of caution on August 20, 2018, it filed an Emergency Motion to Vacate the Final Judgment or in the Alternative to Amend the Final Judgment with the underlying trial court. If the trial court does not vacate the Final Judgment and merely amends it, St. Paul will not be relieved of the prejudice it has suffered.

- employment by the protected person; or

- performance of duties related to the

conduct of the protected person's business….

[D.E. 1-4 at P. 77].[10] It is undisputed that Ms. Walton alleged that she was acting in the scope of her employment with IAG when she was injured by Mr. Dames. [D.E. 1-1 ¶ 11, 13 ].[11] Based on the plain language of the Policy, the exclusion unambiguously applies to the negligence claims against IAG that survived dismissal and for which a verdict was rendered in Ms. Walton's favor. *See Fla. Ins. Guar. Ass'n, Inc. v. Revoredo*, 698 So. 2d 890, 892 (Fla. 3d DCA 1997).

Yet, the R&R recommended against summary judgment in favor of St. Paul as regards the application of the Employer's Liability Exclusion to IAG's claim for coverage. The R&R found that the Employer's Liability Exclusion is ambiguous based upon its finding that Mr. Dames qualifies as a protected person read in conjunction with the Policy's separation of insureds provision. [D.E. 45 at P. 29-32]. St. Paul objects because the R&R misapplies the separation of insured's provision.

Florida routinely enforces the plain language of an Employer's Liability Exclusion in a general liability policy.  In *Capitol Specialty Ins. Corp. v. Royal Crane, LLC*, this Court noted that "Florida courts regularly find employer liability exclusions like the one here to be valid and unambiguous." 2015 WL 859073, at *6 (citing *Florida Ins. Guar. Ass'n, Inc. v. Revoredo,* 698 So.2d 890 (Fla. 3d DCA 1997) (general employee exclusion and workers' compensation exclusion overlapped and were both valid, unambiguous and enforceable to preclude coverage)). *See also, Greathead v. Asplundh Tree Expert Co.*, 473 So. 2d 1380, 1383 (Fla. 1st DCA 1985) (same);

---

[10] It should be noted that the R&R analyzes the Policy's Employment-Related Practices Exclusion, and rejects its application to Ms. Walton's claim.  [D.E. 45 at P. 32]  St. Paul did not move for summary judgment on the basis of that exclusion, and has not argued for its application to either IAG or Mr. Dames.

[11] The R&R correctly found that the injuries resulted from Ms. Walton's activities within the scope of her employment. [D.E. 45 at P. 28] ("A review of these allegations demonstrates that Plaintiff's reporting to Mr. Dames's office 'at the conclusion of her shift' had more than a mere coincidental connection to her employment"), citing to *Taurus Holding, Inc. v. U.S. Fidelity* and *Guar. Co.,* 913 So.2d 528, 533 (Fla. 2005) for the proposition that the phrase "arising out of" in insurance coverage or exclusion provisions must be read broadly, requiring "some level of causation greater than coincidence," but not equivalent to proximate causation.

*Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678-79 (Fla. 4th DCA 2009) (exclusion precluded coverage for negligence-based injuries alleged in employees' tort suits against their employer); *Nautilus Ins. Co. v. S & S Indus. Servs., Inc.*, 2007 WL 951776, at *6 (S.D. Fla. 2007) (enforcing employee exclusion, which amended and replaced previous policy provision, as unambiguous); *Amerisure Ins. Co. v. Orange & Blue Const., Inc.*, 913 F.Supp.2d 1363, 1373 (S.D. Fla. 2012) (enforcing employee exclusion)).

Typically, a separation of insureds analysis is done for the purpose of determining whether the conduct of one insured may bar coverage for other insureds. *Taylor v. Admiral Ins. Co.*, 187 So.3d 258, 260 (Fla. 3d DCA 2016); *Evanston Ins. Co. v. Design Build Interamerican, Inc.*, 569 Fed. App'x 739, 742-743 (11th Cir. 2014). That is a very different analysis than the current circumstance.[12] The application of the Employer's Liability Exclusion is only dependent on two facts: (1) whether Ms. Walton was an employee of THE protected person (here, IAG); and (2) whether she claimed her injuries arose out of and in the course of that employment. Both prongs of the exclusion have been established based upon the undisputed facts of the claim, and therefore, the exclusion applies to the negligence claims against IAG. St. Paul is entitled to summary judgment as to any duty to defend or indemnity IAG for Ms. Walton's suit.

The Employer's Liability Exclusion is not rendered ambiguous as to IAG even if Mr. Dames might otherwise also be a protected person under the policy. The separation of insureds provisions simply mandate that any claim for coverage by Mr. Dames be reviewed independent from that of IAG. That means that any given policy provision may apply to each differently, which is in fact the case here.  St. Paul has never asserted that the Employer's Liability Exclusion applied to Mr. Dames, because it clearly does not. The exclusion only applies to a protected person who was THE employer of Ms. Walton – here clearly IAG, but also clearly not Mr. Dames.  Because the Employer's Liability Exclusion can be clearly and unambiguously be read so as to apply to IAG, even though the exclusion does not apply to Mr. Dames, the separation of insureds provisions are working exactly as the Policy intended:  the exclusion applies to one protected person (IAG) but not to the other (Mr. Dames), assuming for the sake of argument that Mr. Dames qualifies as

---

[12] For this reason, Magistrate Snow's reliance on *Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1057 (Fla. 5th DCA 1994) and *Evanston Ins. Co. v. Design Build Interamerican, Inc.*, 569 Fed. App'x 739 (11th Cir. 2014) is misplaced.

a protected person. Based upon the clear and unambiguous language of the policy, no coverage exists for Ms. Walton's claims against IAG.[13]

**B.      St. Paul objects to the R&R's finding that St. Paul admitted that Mr. Dames was acting within the scope of his employment to IAG, and therefore qualifies as a protected person for purposes of satisfying Ms. Walton's judgment.**

The R&R found that Mr. Dames qualifies as a "protected person" under the Policy because he was an employee of IAG and was Ms. Walton's supervisor. The definition of "protected person" only includes an "employees" (such as Mr. Dames) "for…work done within the scope of their employment by [IAG]; or their performance of duties related to the conduct of [IAG] business." The definition of "protected person" specifically excludes employees for "bodily injury" to any "fellow employee," but does include an exception for supervisory employees.

In its statement of undisputed facts, St. Paul quoted the complaint against Mr. Dames which **alleged** that Mr. Dames was clearly within the scope of his employment. While St. Paul admitted that the complaint so alleged, that is a far cry from admitting the truth of those allegations. While St. Paul may not look beyond those allegations for purposes of a duty to defend, it can certainly do so for purposes of determining whether it has an obligation to indemnify Mr. Dames for Ms. Walton's judgment.[14] As a matter of law, Mr. Dames was not acting in the course and scope of his employment with IAG when he sexually harassed and assaulted Ms. Walton. *See, e.g., Goss v. Human Services Associates, Inc.,* 79 So.3d 127 (Fla. 5th DCA 1986) (holding that sexual assaults and batteries committed by employees are generally held to be outside the scope of an employee's employment and that sexual abuse was not within the course and scope of employment because the act was not in furtherance of the employment).

---

[13]  St. Paul has never claimed or argued that the Employer's Liability Exclusion applies to Mr. Dames.  Indeed, it clearly does not.

[14] Other coverage defenses would also preclude an indemnity obligation for Mr. Dames under the Policy, such as: (1) whether the judgment was for "bodily injury," as defined by the Policy, as opposed to for emotional distress; (2) whether the purported "bodily injury" was caused by an "event," meaning an accident, from the perspective of Mr. Dames, and (3) whether the intentional acts exclusion in the Policy applied to Mr. Dames. See, e.g., *State Farm Fire and Cas. Co. v. Tippett*, 864 So.2d 31, 36 (Fla. 4th DCA 2003) (holding that coverage for sexual assault was barred by intentional acts exclusion). St. Paul's present motion only addressed the duty to defend, because that there is no duty to defend means there is no duty to indemnify. But the opposite is not true: a finding of a potential duty to defend does not necessarily lead to the conclusion that St. Paul had a duty to indemnify the Final Judgment.

CASE NO. 17-61391-CIV

In any case, the R&R's focus on this issue of Mr. Dames' status as a protected person (or not) under the Policy is misplaced because the real issue here is whether the negligent hiring, retention and supervision claims against IAG are covered under the Policy. Indeed, all claims against Mr. Dames were dismissed with prejudice in the underlying litigation. The inclusion of the claims against Mr. Dames in the verdict form and subsequent judgment is a mistake that only further proves St. Paul's prejudice in not being able to defend the underlying litigation and retain counsel to try the case.[15] In sum and as explained above and in St. Paul's briefings, the Employers' Liability exclusions bars coverage for the claims against IAG, which are the only claims at issue following the dismissal with prejudice of the claims against Mr. Dames.

## CONCLUSION

For the reasons stated above, the Court should reject the Magistrate's recommendation that this case be remanded to state court or, in the alternative, her recommendation to deny St. Paul's Motion for Summary Judgment. Furthermore, for the aforementioned reasons, the Court should grant St. Paul's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/Rory Eric Jurman_____
Rory Eric Jurman

---

[15] St. Paul is moving to vacate or amend the judgment against Mr. Dames as it was a mistake due to the claims against him having been dismissed with prejudice prior to trial.

CASE NO. 17-61391-CIV

## SERVICE LIST

Coleman W. Watson, Esq.
Watson LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
E-Mail: coleman@watsonllp.com; docketing@watsonllp.com; ronika@watsonllp.com
Telephone: (407) 377-6634
Facsimile: (407) 377-6688
Attorney for CHERRIE WALTON

Respectfully submitted,


/s/ Rory Eric Jurman

Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Steven S. Cula
Fla. Bar No. 1002949
Email: scula@fowler-white.com

Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:    (954) 377-8101